IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


VERNON YOUNG,

                            Plaintiff,                    Case No. 3:09 CV 1894

                -vs-
                                                         MEMORANDUM OPINION
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

KATZ, J.

        This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate

Judge Kenneth S. McHargh, and Defendant Michael J. Astrue's ("Commissioner") objections

thereto. (Doc. 18).  In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this

Court has made a *de novo* determination of those of the Magistrate's findings to which the

Commissioner objects.  *See* Fed. R. Civ. P. 72(b).

        For the following reasons, this Court adopts in part the Report and Recommendation of

Magistrate Judge McHargh and remands this case to the Social Security Administration for further

proceedings consistent with this opinion.

**I. Background**

        On December 30, 2005, Plaintiff, Vernon Young, filed an application for Supplemental

Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382, 1382c.  (Tr.

at 37, 46).  Plaintiff's SSI application was denied, as was his subsequent request for

reconsideration.  (Tr. at 20, 38).  Pursuant to his request for a *de novo* hearing,  Plaintiff appeared

with counsel via video conference in front of Administrative Law Judge James H. Packer ("ALJ")

on December 9, 2008.  (Tr. at 298-307).  On December 23, 2008, the ALJ found Plaintiff was not

disabled because he failed to meet step five of the well known five-step sequential analysis.[1] 20 C.F.R. § 416.920(a); (Tr. 20-26). On June 1, 2009, Plaintiff requested review by the Appeals Council and submitted additional evidence in support of that request. (Tr. at 10-12, 15, 41, 221-97). On June 21, 2009, the Appeals Council denied Plaintiff's request, thus making the ALJ's report the Commissioner's final decision. 20 C.F.R. § 422.210(a)(2009); (Tr. at 5). Plaintiff filed a timely appeal to the Court seeking judicial review of the Commissioner's final decision.

### A. Medical History and Disability-Related Development and Documentation

Plaintiff was born on December 21, 1955. (Tr. at 25). He was fifty years old on the date of his SSI application and fifty-three years old on the date of the ALJ's decision. (Tr. at 26, 46).

From January 2005 through March 2007, Plaintiff sought medical treatment at the Neighborhood Health Association for diabetes, hypertension, hyperlipidemia, the flu, back pain, hip pain, and a weakened bladder. (Tr. at 80-95, 200-01). Throughout these visits, Plaintiff's weight was listed as high as 234 pounds and as low as 204 pounds. *Id*. Plaintiff was referred to a neurosurgeon for chronic low back pain, but the referral noted that he did not have insurance. *Id*. at 86.

---

[1]

The test is as follows:

    i) Whether claimant is doing substantial gainful activity;
(ii) If claimant is not doing substantial gainful activity, whether he has a servere medically determinable physical or mental impairment and is thus disabled;
(iii) If claimant is not doing substantial gainful activity and has a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry;
(iv) If claimant can still do past relevant work, he is not disabled;
(v) Whether the claimant can make an adjustment to other work considering his age, education, and work experience (residual functioning capacity). If the claimant can make an adjustment to other work, he is not disabled. If the claimant cannot make an adjustment to other work, he is disabled.

20 C.F.R. § 416.920(a); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

In December of 2005, Plaintiff was admitted to the Emergency Room due to complaints of abdominal pain, constipation, and back pain.  (Tr. at 128-134).  He was later discharged and given a final diagnosis of "abdominal pain" and additional diagnoses of "ascites" and "possible liver disease."  (Tr. at 109).

Also in 2005, Plaintiff met with Dr. Park, who conducted a physical examination, which found Plaintiff was "well-developed, well-nourished," and had no signs of acute distress.  (Tr. at 175).  Some time after this examination, Plaintiff paid several visits to treating physician Dr. Viejendra, complaining of back, leg, and hip pain as well as bloating.  Dr. Vijendra frequently ordered tests including MRIs, ultrasounds, x-rays and CT scans to address Plaintiff's complaints.

Tests on Plaintiff's spine consistently found a broad posterior disc bulge at L4-L5 with a possible annular tear. (Tr. at 112, 125, 126, 184, 188, 189). Generally, MRIs did not find a change in Plaintiff's condition, although a 2007 x-ray on his stomach noted degenerative changes in his hips and spine.  *Id*. at 181.  Similarly, ultrasounds and CT scans every six months found the overall appearance of lesions on Plaintiff's liver unchanged.  (Tr. at 114, 118, 123, 186).

From January 20, 2005 to April 4, 2005, a series of blood tests at Pathology Laboratories found Plaintiff had high levels of cholesterol, lymphocyte, monocyte, and low levels of eosinophil and neutrophil.  (Tr. at 76-80, 182).  X-rays of his hips and knees did not find any abnormalities. *Id*.

An x-ray of Plaintiff's belly found a clear chest, no evidence of obstruction of ileus in the bowels, and no readiopaque calcuili.  (Tr. at 181).  Moreover, a subsequent ultrasound did not find any evidence of ascites.  *Id.* at 180.

From February 2006 through August, 2007, Dr. Vijendra completed four basic medical forms for the Ohio Department of Job and Family Services.  (Tr. at 143-45, 190-91, 192-93, 196-97).  In the most recent of those reports, Dr. Vijendra listed hypertension, chronic back pain dating back to 1985, hyperlipidemia, diabetes, disc bulge, erectile dysfunction, hemangiomas, and an MRI annular tear as Plaintiff's medical conditions.  (Tr. at 190).  Dr. Vijendra frequently omitted required information, and never gave specific examples to support her findings.  (Tr. at 143-45, 190-91, 192-93, 196-97).  Until the most recent form, where she indicated Plaintiff's health was "deteriorating," she marked Plaintiff's health as "poor but stable."  *Id*.  Throughout these forms, Dr. Vijendra recommended Plaintiff seek additional treatment and also opined Plaintiff is "unemployable".  *Id*.

On May 25, 2006, Dr. Vijendra referred Plaintiff to a Diabetes Self-Management Training Class.  (Tr. at 100-03).  On the referral sheet, Dr. Vijendra  checked only "Type II DM without mention of complication" as a relevant diagnosis and treatment plan, and did not check "obesity" or "morbid" obesity.  *Id*.

At his first class, Plaintiff completed an information sheet for the Diabetes Self-Management Database.  There, he indicated two people lived in his household, that he was 5'9.5" tall, weighed 228 pounds, and had a goal weight of 185 pounds.  *Id*.  Furthermore, Plaintiff indicated he is unemployed and that he has been trying to get disability for four years.  *Id*.  He indicated that he has type II diabetes, high blood pressure, and high cholesterol, but left the box for obesity unmarked.  *Id*.  Lastly, Plaintiff filled in general information about his family history and health, including a history of type II diabetes and pain in his back, foot, and leg.  *Id*.

4

On June 21, 2006, a one-on-one Diabetes Assessment and Education Record was completed by two persons at St. Vincent Mercy Medical Center, whose initials were "J.W." and "B.B."  (Tr. at 104-05).  There, Plaintiff's BMI (Body Mass Index) was listed at 34.9.  *Id*. at 104. In the "comments" section of the form, one of the educators noted, "Pt.'s father died 2 yrs ago [of] complications from diabetes. [Patient] has a $H_{10}$, [hypertension], hyperlipidemia, obesity, [and] back/knee/leg prob[lems]."  *Id*.  Plaintiff was provided with instruction and assessment on diabetes care and also given a group education plan.  *Id*.  He indicated that he cooked, although his girlfriend sometimes helped.  *Id*. at 105.

Most recently, in September of 2008, Plaintiff was seen by Dr. Rowan.   He opined Plaintiff was unemployable because of moderate limitations in pushing/pulling, bending, reaching, handling, and repetitive foot movements.  (Tr. at 219).  Dr. Rowan did not elaborate on his findings in the space provided, nor did he indicate whether Plaintiff's ability to stand, walk, sit, lift and carry were affected.  *Id*.  He also did not indicate  what type of work Plaintiff could do with his limitations, or how long the limitations were expected to last.  *Id*.  Furthermore, Dr. Rowan did not record Plaintiff's weight.  *Id*.  Dr. Rowan signed off on a Loan Discharge Application for the Plaintiff, citing diabetes, cardiomyopathy, and hypertension as diagnosed medical conditions.  (Tr. at 53).  He did not, however, indicate how those diagnoses prevented Plaintiff from working, or mention Plaintiff's disc bulge.  *Id*.

For Ohio Disability Determinations Services, Dr. Padamadan completed an internal medicine evaluation of Plaintiff.  (Tr. at 149-52).  After conducting a comprehensive clinical evaluation and reviewing any procedures the Plaintiff had previously received, Dr. Padamadan found: 1) Plaintiff has type II diabetes; 2) Plaintiff's alleged lower back, knee, and leg pain is not

5

supported by objective evidence; 3) Plaintiff's headaches are relieved by ibuprofen; and 4) Plaintiff's alleged right-sided chest pain is non-cardiac. *Id*. at 152. Furthermore, Dr. Padamadan noted that Plaintiff's weight was 230 pounds and he had no limitation of physical activities. *Id*.

As is required for the ALJ to make his determination, Dr. Diane Manos, M.D. completed a Physical Residual Functional Capacity Assessment ("RFC"). (Tr. at 135-142). Dr. Manos considered Plaintiff's diagnosis of diabetes and his lower disc bulge, and determined Plaintiff could occasionally lift or carry fifty pounds, could frequently carry or lift twenty-five pounds, and had no other limitations on pushing/pulling, communicating, visualizing, or manipulating. *Id*. Moreover, Dr. Manos found Plaintiff could stand, walk, and sit for six hours in an eight hour day. *Id*. The assessment concluded that Plaintiff's allegations of pain are partially credible. *Id*.

A Report of Contact Form SSA-5002 found, "despite the limitations described in the RFC, this claimant could still engage [in] unskilled medium work positions." (Tr. at 75). These positions included bartender, kitchen helper, day worker, and caretaker, all of which exist in significant numbers in Ohio. *Id.*

### B. Plaintiff's Testimony

Plaintiff testified that he completed high school, received vocational training, and previously worked as a laborer. (Tr. at 150, 300-03). Before the ALJ, Plaintiff alleged that he has had back pain since 1985, and that he is not able to walk more than two blocks without his knees giving out. (Tr. at 303-04). Furthermore, he claimed to be unable to stand in one place for more than half an hour without propping himself up. *Id*. He claimed the circulation in his legs stops if he sits without stretching every half hour. *Id*. at 304. He testified that he takes a pill at night to keep from vomiting in his sleep and that while he can handle "things," he is unable to carry

groceries without bending over and having "tingling" hands.  *Id*. at 305-06.  He admitted the cardiologist had not found anything wrong with his heart, but stated he still gets short of breath and will probably return to the hospital to address this problem.  *Id*. at 306.

### C. The ALJ's Decision

In a decision dated December 23, 2008, the ALJ determined Plaintiff was not disabled. (Tr. at 26).  The ALJ's specific findings are paraphrased below:

1. Plaintiff had not engaged in substantial gainful activity since December 30, 2005, the application date.

2. Plaintiff has a low back disorder which is a severe impairment under 20 C.F.R. § 416.921. Plaintiff also has diabetes mellitus, a liver disorder, and hypertension, but these cannot be severe because they have not prevented the Plaintiff from engaging in substantial gainful employment.  Additionally, Dr. Rowan's diagnosis of cardiomyopathy cannot be supported by objective medical evidence because a cardiologist found Plaintiff does not have a cardiac condition.

3.  Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

4. The Plaintiff has the RFC to perform the full range of light work defined in 20 C.F. R. § 416. 967 (b).

5. Plaintiff is unable to perform past relevant work.

6. Plaintiff was born on December 21, 1955 and was 50 years old at the time the application was filed.  He is an individual closely approaching advanced age defined by 20 C.F.R. § 416.963.

7

7.  Plaintiff has at least a high school education and can communicate in English.

8. Transferability of job skills is not an issue for Plaintiff because his past work is

unskilled.

9. In consideration of the Plaintiff's age, education, work experience, and RFC, there are

jobs that exist in significant numbers in the national economy which Plaintiff can perform.

10.  Plaintiff had not been under a disability, as defined in the Social Security Act, since

December 30, 2005, the date the application was filed.

(Tr. at 20-27).

As part of his evaluation of Plaintiff's alleged pain, the ALJ determined that while there is evidence to show his "medically determinable impairments could reasonably be expected to produce the alleged symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 24).

In support of this determination, the ALJ said the claimant "is able to maintain a residence by himself" and is able to perform "basic activities of daily living that [are] consistent with the ability to perform some work."  *Id*. at 24.  The report noted that the opinions of Drs. Rowan and Vijendra found the claimant to be "unemployable," yet only prescribed "minimal treatment" for the alleged chronic, severe back pain. *Id*.  Specifically, the ALJ found those doctors did not direct the claimant to attend physical therapy or to pursue any "aggressive" treatment.  *Id*.  For these reasons, the ALJ gave the opinions of Drs. Rowan and Vijendra "little weight." *Id.* at 24.  The ALJ found Dr. Padamadan's opinion that the claimant can perform light to medium work to be credible and consistent with the RFC assessment.  *Id*.

### D. The Magistrate Judge's Report and Recommendation

8

The Magistrate Judge determined that the decision of the Commissioner was not supported by substantial evidence and thus should be reversed and remanded to Social Security Administration for further proceedings.  (R&R at 1).  Specifically, the Magistrate Judge found: 1) the ALJ improperly assessed Plaintiff's residual functioning capacity by failing to consider his obesity; 2) the ALJ's assessment of Plaintiff's credibility was not supported by substantial evidence; and 3) the ALJ improperly assessed the weight to be given to the medical opinions in the record.  (R&R at 4).

## II. Standard of Review

### A. Jurisdiction

This Court exercises jurisdiction over the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832-833 (6th Cir. 2006).

### B. Review of the R&R

This Court conducts a *de novo* review of those portions of the Magistrate Judge's report to which Plaintiff objects.  28 U.S.C. § 636(b)(1).  In making its *de novo* determination, the Court reviews the ALJ's decision to see if it is supported by substantial evidence.  42 U.S.C. § 405(g). This Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 528 (6th Cir. 1997).  The Court does not re-weigh the evidence, but must affirm the ALJ's findings as long as there is substantial evidence to support those findings, even if this Court would have decided the matter differently, and even if there is substantial evidence supporting the

claimant's position. *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam);

*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). "Substantial evidence is more than

a scintilla of evidence, but less than a preponderance." *Cutlip v. Sec'y of Health & Human Servs.*,

25 F.3d 284, 286 (6th Cir. 1994). It is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427 (1971) (citation omitted); *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1053

(6th Cir. 1983). The ALJ's decision is not subject to reversal merely because substantial evidence

exists in the record to support a different conclusion. *Mullen*, 800 F.2d at 545.

*C. Disability Standard*

A claimant is entitled to receive Supplemental Security Income only when he establishes a

disability within the meaning of the Social Security Act. *See* 42 U.S.C. § 1381. A claimant is

considered disabled when he cannot perform "substantial gainful employment by reason of any

medically determinable physical or mental impairment that can be expected to result in death or

that has lasted or can be expected to last of a continuous period of not less than twelve (12)

months." 20 C.F.R. § 416.905.

*D. Review of the Commissioner's Decision*

The standard of review described by the Magistrate Judge is hereby adopted as follows:

> Judicial review of the Commissioner's benefits decision is limited to a
> determination of whether, based on the record as a whole, the Commissioner's
> decision is supported by substantial evidence, and whether, in making that decision,
> the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*,
> 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383,
> 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial
> evidence" has been defined as more than a scintilla of evidence but less than a
> preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*,
> 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature
> that a reasonable mind might accept it as adequate support for the Commissioner's

10

final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

(R&R at 3-4).

## III. Discussion

The Commissioner objects to the R&R on four grounds: 1) the Magistrate Judge erred in relying on evidence that was not part of the record before the ALJ;  2) the Magistrate Judge's finding that the ALJ improperly assessed Plaintiff's RFC by failing to consider obesity was not well-founded; 3) the Magistrate Judge failed to recognize that the ALJ gave extensive consideration to objective medical evidence as part of his credibility analysis; and 4) the Magistrate Judge improperly concluded that the ALJ did not give proper weight to the opinions of Drs. Vijendra and Rowan.  (Doc. 18 at 1, 3, 6, 7).  For the following reasons, the Court finds all but the Commissioner's third objection well-taken.

### A.  The Magistrate Judge Improperly Considered Evidence That Was Not Before the ALJ

In the Sixth Circuit, "courts may not reverse an administrative law judge's decision on the basis of evidence first submitted to the Appeals Council." *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. Ky. 1993).  Furthermore, the Sixth Circuit has held evidence submitted to the Appeals Council after the ALJ's decision to deny Social Security Disability Insurance benefits "cannot be considered part of the record for purposes of substantial evidence review." *Foster v. Halter*, 279

11

F.3d 348, 358 (6th Cir. Ohio 2001) (citing *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148

(6th Cir. 1996)).  Also, "where the Appeals Council considers new evidence but declines to review

a claimant's application for disability insurance benefits on the merits, the district court cannot

consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision."

*Foster*, 279 F.3d 348, 358.

In the instant case, the Magistrate Judge cited evidence in the R&R that was not in front of

the ALJ.  (R&R at 8 (citing Tr. at 263); *id.* at 9 (citing Tr. at 251-64); *id.* at 15 (citing Tr. At 224-

46); *id.* at 17 (citing Tr. at 224-42); *see also* (Doc. 18 at 1-3); (Doc. 19 at 2).  That evidence was

first submitted to the Appeals Council, but when the Appeals Council denied Plaintiff's

application for review, the ALJ's decision became final.  (Doc. 18 at 1).  That evidence should not

have been considered by the Magistrate Judge for purposes of substantial evidence review.

*Foster*, 279 F.3d at 357.

As the R&R remanded under a sentence four failure to support with substantial evidence

standard, the evidence first introduced to the Appeals Council cannot be considered in this *de*

*novo* review of the Commissioner's objections.  42 U.S.C. § 405 (g); (R&R at 18).

### B. The ALJ Properly Disregarded the Claimant's Obesity

In the R&R, the Magistrate Judge found that the ALJ improperly failed to consider

Plaintiff's obesity in his report.  (R&R at 4).   The Commissioner contends, however, that the ALJ

was not required to consider obesity, because the record did not include a diagnosis of obesity or

evidence of the effect obesity would have on the ALJ's analysis.  (Doc. 18 at 5-6).

Where evidence does not contain a diagnosis of obesity, but does include medical records

indicating a consistently high body weight, the Social Security Administration "will use [its]

12

judgement to establish the presence of obesity." SSR 02-1p. While SSR 02-1p does not offer a particular mode of analysis for the ALJ's consideration of obesity, it does require the ALJ to conduct an "individualized assessment" of the impact obesity has on the claimant's functional abilities. *Id*. Where obesity is found to impair a claimant, it must be considered by the ALJ in combination with other impairments, whether or not obesity would be severe when considered separately. 42 U.S.C. § 1382c (a) (3) (G); 20 C.F.R. § 416.923 (2010); SSR 02-1p.

However, it is up to the claimant to furnish medical and other evidence which the "Social Security Administration can use to reach conclusions about [a claimant's] medical impairment(s) and its effect on [his] ability to work on a sustained basis." 20 CFR § 404.1512 (a). Moreover, "[SSA] will not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p.

The Sixth Circuit requires the ALJ to mention obesity either expressly or indirectly  where the record includes evidence of obesity's effects on the claimant's impairments. In *Bledsoe v. Barnhard*, the claimant's expert reports referred to the claimant as extremely and morbidly obese. 165 Fed. Appx. 408 (6th Cir. 2006). Although obesity was not expressly mentioned in the report, the Sixth Circuit held that the ALJ had sufficiently considered obesity by referencing the expert reports, which had considered obesity. *Id*. at 411-12. Without definite reference to a report which considered a claimant's obesity, and where "there does not appear to be any question from the record that obesity is a serious consideration" in the case, the ALJ must mention obesity in his report "more than in passing." *Norman v. Astrue*, 694 F. Supp. 2d 738, 741-42 (N.D. Ohio 2010).

On the other hand, where a claimant presents limited evidence of the effects of his obesity, the ALJ may give obesity less consideration. In *Nejat v. Comm'r of Soc. Sec.,* the claimant

13

presented evidence to show he had been diagnosed with obesity by one of his doctors.  359 Fed.
Appx. 574, 577 (6th Cir. Tenn. 2009).  The Sixth Circuit found that both because of the "scant"
amount of evidence of obesity in the record, and because the claimant failed to list obesity in his
application for disability, the ALJ was not required to do more than acknowledge obesity in the
report.  *Id.*

A claimant must also provide enough evidence of the effect obesity has on his ability to
work.  In *Cranfield v. Comm'r of Soc. Sec.*, medical records before the ALJ included a diagnosis
of obesity and a medical statement that the claimant's symptoms were likely related to her weight.
79 Fed. Appx. 852, 854 (6th Cir. Tenn. 2003).  In his report, the ALJ mentioned obesity, but gave
extensive consideration only to the impairments the claimant specifically alleged.  *Id.*  The
claimant argued that the ALJ should have given more consideration to her obesity, but the Court
held that "since [the claimant's] claims did not indicate that obesity was a significant impairment,
the ALJ was not required to give the issue any more attention than he did."  *Id.* at 857.   The Court
in *Cranfield* added:

> Ms. Cranfield provided no evidence that obesity affected her ability to work. Moreover, 20
> CFR § 404.1512(a) required Ms. Cranfield to "furnish medical and other evidence that [the
> SSA] can use to reach conclusions about [her] medical impairment(s) and … its effect on
> [her] ability to work on a sustained basis." *See* 20 CFR § 404.1512(a). Ms. Cranfield did
> not satisfy this requirement with respect to an obesity claim.  Thus, the ALJ and the district
> court had no obligation to address Ms. Cranfield's obesity.

*Cranfield*, 79 Fed. Appx. at 857-58.

In this case, although Plaintiff had provided evidence of obesity, he did not allege obesity
as an impairment, nor that had he been diagnosed with obesity.  The R&R noted that diabetes and
obesity are commonly linked, so Plaintiff's diagnosis of diabetes should be evidence of treatment
for obesity.  (R&R at 12).  Plaintiff's doctors, however, never attributed his diabetes to obesity,

and therefore the Court is not willing to speculate on a possible medical link.  *See* 42 U.S.C.S. §

405(g) (A reviewing Court is limited to determining whether an ALJ's findings are supported by

substantial evidence).

At his diabetes self-management education class,  Plaintiff's BMI was noted as 34.9, and

an unidentified educator from St. Vincent's Mercy Medical Center listed Plaintiff's obesity as a

"risk factor" for diabetes.  (Tr. at 104) (also listed were hypertension, family history,

hyperlipidemia, and back/knee/leg problems).[2]   At that class, Plaintiff indicated his "goal weight"

was 185 pounds.  *Id.*   Plaintiff's weight has been recorded around 230 pounds throughout his

medical history, and the parties do not dispute that this renders him obese for Social Security

purposes.  (Tr. at 61, 81-95, 98, 102, 104, 143, 152, 192, 196, 100-01, 292-06); (Doc. 18 at 3-6);

(Doc. 19 at 3).

Although he was obese, Plaintiff did not furnish any evidence as to the effect obesity had

on his ability to work.  20 C.F.R. § 416.923 (2010); SSR 02-1p.  Plaintiff did not complain of

obesity in his testimony before the ALJ nor in his Disability Report Forms.  (Tr. at 54, 61-71, 303-

06).  Indeed, on the initial assessment form filled out as part of his diabetes education class,

Plaintiff indicated that he had type II diabetes, high blood pressure, and high cholesterol, but did

not mark the "obesity" box.  (Tr. at 103).  Furthermore, on the referral sheet for the diabetes self-

management education class, treating physician Dr. Vijendra checked only "type II DM without

---

[2]  Two persons were listed as "educators" with initials "B.B." and "J.W."  It is not clear that these individuals are
medical doctors, and these initials do not match those of any doctors in the record.  (Tr. at 104-05).  While, "regardless
of its source, [SSA] will evaluate every medical opinion...receive[d]," this comment is not sufficient to be a "medical
opinion." 20 C.R.R. § 404.1527 ("Medical opinions are statements from physicians and psychologists or other
acceptable medical sources that reflect judgements about the nature and severity of [a claimant's] symptoms,
diagnosis, and prognosis, what [a claimant] can still do despite impairment(s), and [his] physical or mental
restrictions.").

mention of complication" as the relevant diagnosis, leaving the boxes for "obesity" and "morbid obesity" unmarked. (Tr. at 100). On the most recent basic medical form Dr. Vijendra completed for the Ohio Department of Job and Family Services, she did not fill in Plaintiff's weight. (Tr. at 191). Furthermore, Dr. Rowan did not even list Plaintiff's weight in his report. (Tr. at 219); *see also* (Tr. at 152) (Dr. Padamadan found no limitation of physical activities even after weighing and examining Plaintiff); (Tr. at 135-42) (Dr. Manos did not discuss Plaintiff's weight or obesity in the RFC). Following a thorough review of the record, it is clear that the ALJ had no evidence of the effect of Plaintiff's obesity on his ability to work nor a diagnosis of obesity before him.

The R&R's reliance on *Hendricks v. Astrue* is unpersuasive, as that case is distinguishable. 2008 U.S. Dist. LEXIS 11695 (W.D. Ky. Apr. 7, 2008); (R&R at 11-12). There, the Court remanded as a result of the ALJ's failure to consider obesity, but unlike the case at bar, that claimant had presented a diagnosis of obesity in the record. *Hendricks*, 2008 U.S. Dist. LEXIS 11695. Furthermore, the R&R's reliance on *English v. Comm'r of Soc. Sec.* is unpersuasive, because that R&R was not objected to and did not cite any authority from the Sixth Circuit as part of its obesity analysis. *English v. Comm'r of Soc. Sec.* 2010 U.S. Dist. LEXIS 7186 (N.D. Ohio Jan 27, 2010); (R&R at 11-12).

Therefore, because there is not a single diagnosis of obesity in the record, and because Plaintiff failed to furnish evidence as to how his obesity affected his ability to work, the ALJ was not required to give obesity any express consideration in the report.

For the foregoing reasons, the Commissioner's objection to the R&R's recommendation to remand for the ALJ's failure to mention obesity is well-taken.

***C. The ALJ's Credibility Analysis is Not Supported by Substantial Evidence***

16

The R&R held that the ALJ's determination of Plaintiff's credibility was not supported by substantial evidence.  (R&R at 12-13).  The Commissioner objects to this finding, claiming that the ALJ supported his finding with substantial evidence by way of support from objective medical evidence, Plaintiff's treatment recommendations, and his daily living activities.  (Doc. 18 at 6). Both because the ALJ incorrectly analyzed the evidence of claimant's daily living activities and treatment records, and because an adverse credibility determination cannot be substantially supported by medical evidence alone, this Court must remand to the Social Security Administration for further proceedings.

On review, "great deference" is given to the ALJ's credibility determination, largely because the ALJ had the opportunity to observe the claimant and his demeanor.  *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003); *Blacha v. Secretary of H.H.S.*, 927 F.2d 228, 230 (6th Cir. 1990); *Williamson v. Secretary of H.H.S.*, 796 F.2d 146, 150 (6th Cir. 1986).   But an adverse credibility finding must be supported by substantial evidence, and must be sufficiently explained for purposes of appellate review.  *Rogers*, 486 F.3d at 248-49.

A disability claim can only  be supported by subjective complaints with accompanying objective medical evidence.  *Jones*, 336 F.3d at 475.  But medical evidence alone cannot support a finding of adverse credibility.  *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).

Where there are "numerous inconsistencies" between the objective and subjective evidence, the ALJ is not required to accept a claimant's subjective complaints as credible.  *Id.* Rather, the ALJ must resolve any conflict in the evidence, and his findings may not be disturbed when they are supported by substantial evidence*. Id.* at 1035.  As part of his determination, the ALJ must consider all relevant evidence, including evidence relating to the claimant's daily

17

activities; the location, duration, frequency, and intensity of pain; the medication and other

treatments used to relieve pain; and any related symptoms affecting his ability to work. *Id.* at

1038-39; *see also* 20 C.F.R. § 416.929(a).

To evaluate the credibility of a claimant's subjective reports of pain, a two-part analysis is

used.  20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  The Sixth

Circuit has characterized this analysis as follows:

> First, the ALJ will ask whether the there is an underlying medically determinable physical
> impairment that could reasonably be expected to produce the claimant's symptoms. 20
> C.F.R. § 416.929(a).  Second, if the ALJ finds that such an impairment exists, he must
> evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's
> ability to do basic work activities.  *Id.*

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. Ohio 2007).

In the case at bar, the ALJ first determined that Plaintiff has an underlying condition of a

low back disorder, which could reasonably be expected to produce the alleged symptoms.  (Tr. at

24).

Next, the ALJ considered whether Plaintiff's statements "concerning the intensity,

persistence and limiting effects of these symptoms" were credible. (Tr. at 24) (Plaintiff testified

that he can only walk two blocks before his legs give out, and that he cannot sit or stand for more

than thirty minutes).

As part of this second step, the ALJ first considered Plaintiff's daily activities. (Tr. at 24).

There, the ALJ concluded that Plaintiff is able to maintain a residence by himself. *Id.*  But there is

evidence in the record that contradicts this statement, and indicates that Plaintiff in fact lives with

his mother.  (Tr. at 47) (Plaintiff indicated he lives with others); (Tr. at 47, 61) (Plaintiff has the

same street address as his mother); (Tr. at 102) (Plaintiff indicated two people live in his

18

household); (Tr. at 305) (Plaintiff testified his mother "basically" takes care of him).  Furthermore, there does not appear to be any evidence in the record to support the ALJ's finding that Plaintiff lived alone.

In a conclusory statement, the ALJ determined Plaintiff is able to perform "basic activities of daily living."  (Tr. at 24).  In the record, there is negligible evidence as to whether Plaintiff can or cannot perform any daily activities.  The evidence is not conclusive as to whether the claimant is able to cook on his own, and the ALJ did not elaborate on the particular activities of daily living that Plaintiff was able to perform. (Tr. at 69, 105).  In the record, Plaintiff indicated he has a car used for essential daily needs, but there is no information on who drives the car, or for how long, or what "daily needs" entails.  (Tr. at 47).  Furthermore, Plaintiff testified that he is unable to carry groceries without suffering intense pain, and that he has to lie down most the day to relieve his symptoms.  (Tr. at 305).  Additionally, Plaintiff claimed to rely on his mother's help because it is very difficult for him to perform activities associated with daily living. (Tr. at 305).  Thus, the ALJ's finding that Plaintiff is able to perform activities associated with daily living does not appear to be supported by substantial evidence.

The ALJ also considered the objective medical evidence in the record to evaluate Plaintiff's alleged pain.  There, the ALJ considered the results of MRIs and EMGs, and determined that, while both show a lower back disorder, it is of "very mild ongoing denervation," and does not prevent Plaintiff from engaging in substantial gainful employment.  (Tr. at 24).  Additionally, the ALJ considered the opinions of treating medical Doctors Vijendra and Rowan, which he found to be inconsistent with the alleged pain.  (Tr. at 25).  Those doctors opined that Plaintiff is "unemployable," yet the doctors only prescribed minimal treatment for Plaintiff's back

19

pain.  *Id*.  The ALJ noted that the opinions of Drs. Vijendra and Rowan are also inconsistent with those of state-level physicians, who opined that Plaintiff was able to perform a "medium" level of work and had minimal physical limitations. (Tr. at 25).  Further, the ALJ referred to the lack of treatment given for the pain, noting the doctors did not recommend physical therapy or any other "aggressive" treatment during the relevant time period.  (Tr. at 25).

There is evidence in the record, however, that doctors had recommended further treatment for Plaintiff, including recommendations to see a neurologist, mental health professional, and physical therapist, and to undergo additional MRIs and ultrasounds.  (Tr. at 125, 126, 188, 189, 175, 192, 194, 196).  Although Plaintiff did not follow through with all of these treatment recommendations, the record suggests that Plaintiff could not afford to do so because he did not have insurance.  (Tr. at 86); *see Stennett v. Comm'r*, 476 F.Supp.2d 665, 672 (E.D. Mich. 2007) (Under SSR 96-7p, a claimant's subjective complaints may not rejected because the claimant failed to seek treatment without first considering the claimant's ability to pay for the treatment).  But the ALJ did not consider whether Plaintiff was able to afford additional treatment, or the fact that further treatment was in fact recommended.  Thus, the Court cannot find that substantial evidence supports the ALJ's determination that further treatment for Plaintiff's pain had not been recommended.

In sum, the ALJ failed to provide substantial evidence to support his findings that Plaintiff lives on his own, is able to perform activities associated with daily living, and  had not been recommended for further treatment.  Taken together, these are compelling reasons to disturb the ALJ's adverse credibility determination.  *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. Ohio 2001) (Court may not disturb an adverse credibility determination but for a "compelling reason").

20

Therefore, the Commissioner's objection to the R&R's recommendation to remand for failure to support an adverse credibility determination is without merit.

### D. The ALJ Properly Weighed the Opinions of Treating Physicians

The ALJ gave "little weight" in his report to the opinions of Drs. Vijendra and Rowan, and gave greater weight to Dr. Padamadan.  (Tr. at 25).  The R&R found the ALJ did not provide a good reason for this decision, and that the ALJ should have re-contacted Plaintiff's physicians for more information on how Plaintiff's weight, MRI results, and need to see a neurosurgeoun affected his functional abilities.  (R&R at 17).

Generally, more weight is given to treating physicians, because they are most likely to "provide a detailed, longitudinal picture of [claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  *Id*.  Furthermore, where a treating physician's opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record, that opinion is to be given controlling weight. *Id*.  Where a treating physician's opinion is not given controlling weight, several factors are considered.  20 C.F.R. § 404.1527 (d) (2) (those factors include: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of evidence to support an opinion, and the consistency of medical opinion to the record as a whole).

An ALJ may reject the opinion of a treating physician that is not sufficiently supported by medical findings.  *Combs v. Comm'r*, 459 F.3d 640, 652 (6th Cir. 2006)(en banc); *Walters v. Comm'r*, 127 F.3d 525, 530 (6th Cir. 1997).  But the ALJ must provide a "good reason" for

rejecting that opinion.  20 C.F.R. § 404.1527 (d) (2); *Bogle v. Sullivan*, 998 F.2d 342, 347-348 (6th Cir. 1993).

Here, the ALJ concluded if Plaintiff were unemployable, as Drs. Rowan and Vijendra opined, then the record would include "aggressive" treatment recommendations to address such serious medical problems.  (Tr. at 25).  As the ALJ did not find substantial evidence of "aggressive" treatment recommendations, he concluded that Drs. Rowan and Vijendra's opinion that Plaintiff is unemployable to not be fully credible.  *Id*.  However, as described herein, there is substantial evidence indicating that Plaintiff had in fact been recommended for additional treatment several times.  Moreover, there is not substantial evidence in the record to support the ALJ's conclusion that treatment had not been recommended.

The ALJ further considered objective medical evidence in his report, including x-rays, ultrasounds, and an MRI, which found Plaintiff's back condition was of "very mild ongoing denervation."  (Tr. at 24).  The ALJ found state-agency examining physician Dr. Padamadan's findings consistent with Dr. Manos' RFC evaluation, and thus more credible. (Tr. at 24, 149-52). (Dr. Padamadan's report found Plaintiff's claims unsupported by objective evidence.).  As the opinions of Plaintiff's treating physicians were inconsistent with a significant amount of evidence in the record, the ALJ was required to resolve any conflict therein.  (Tr. at 23-25); see *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. Ohio 1988) ("[The ALJ] gave due deference to the opinion of the treating physician" but is "required to resolve . . . . conflict[s] in the evidence.").

Because the ALJ supported his determination with substantial evidence, including objective medical evidence, the opinions of state-agency physicians, and the Plaintiff's RFC assessment, all of which was consistent with the ALJ's finding, the ALJ has provided  "good

22

reason" to discredit Plaintiff's treating physicians' opinions. Thus, this Court must affirm the weight the ALJ gave to the opinions of the treating physicians. *Cutlip*, 25 F.3d at 286.

**IV. Conclusion**

For the foregoing reasons, the Court adopts the R&R in part, and remands the case to the Social Security Administration for further proceedings consistent with this opinion

IT IS SO ORDERED.

    s/ *David A. Katz*    
DAVID A. KATZ
U. S. DISTRICT JUDGE